**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDUARD MEYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 17 C 5992** |
| **v.** | ) | |
| | ) | **Judge Rubén Castillo** |
| **KEVIN K. MCALEENAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Eduard Meyer ("Plaintiff"), a former employee of the U.S. Transportation Security Administration ("TSA"), brings this workplace discrimination lawsuit against Kevin McAleenan[1] ("Defendant") in his capacity as acting secretary of the U.S. Department of Homeland Security ("DHS") pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* (R. 1, Compl. ¶¶ 1-3, 9, 62-77.) Pursuant to Federal Rule of Civil Procedure 56, Defendant moves for partial summary judgment. (R. 41, Mot. at 1.) For the reasons set forth below, Defendant's motion is granted.

## RELEVANT FACTS

The following facts are undisputed unless otherwise stated. Plaintiff is diagnosed with Tourette Syndrome ("TS"), a condition that causes verbal and physical tics, which, in Plaintiff's case, causes him to uncontrollably say offensive words and make sudden hand movements.

[1] TSA is a component agency within the U.S. Department of Homeland Security ("DHS"), (R. 44, Resp. to Def.'s Facts ¶ 4), and Plaintiff originally brought this lawsuit against Elaine Duke ("Duke") in her official capacity as Acting Secretary of DHS. (R. 1, Compl. ¶ 2; R. 14, Answer ¶ 2.) Defendant, who is the current acting Secretary of the Department of Homeland Security, was later substituted as the sole defendant in this case, (*see* R. 60, Sur-sur-reply). FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

(R. 44, Resp. to Def.'s Facts ¶¶ 3, 6-7.) These tics can occur without Plaintiff's knowledge. (*Id.* ¶ 8.) TS, however, does not affect Plaintiff's memory. (*Id.* ¶ 9.) Plaintiff was first diagnosed with TS in 1984, and he informed the TSA of his condition when he applied for a job there. (*Id.* ¶ 6.)

Plaintiff began working for TSA at O'Hare Airport in September 2002, initially as a security officer and then as an administrative assistant. (*Id.* ¶ 5.) Between 2006 and 2012, several members of TSA management were aware that Plaintiff had TS. (R. 51, Resp. to Pl.'s Facts ¶ 32.) In the summer of 2013, a TSA "employee relations specialist" forwarded a letter from Plaintiff's doctor to a medical consultant for the federal occupational health service, and the medical consultant recommended that the TSA accommodate Plaintiff by offering Plaintiff's coworkers a voluntary educational program about TS. (*Id.* ¶¶ 34-35.) TSA did not implement such a program. (*Id.* ¶ 36.)

In September 2013, TSA issued Plaintiff a letter of reprimand after he refused to apologize to an African American co-worker for using a racial slur against her, which was allegedly triggered by Plaintiff's TS. (R. 44, Resp. to Def.'s Facts ¶ 12; R. 42-2 at 6-8, Letter of Reprimand.) In October 2013, Plaintiff contacted a counselor from the U.S. Equal Employment Opportunity Commission ("EEOC") and alleged that he had been the victim of harassment, disability discrimination, and retaliation because of his TS and workplace complaints he had previously made. (R. 51, Resp. to Pl.'s Facts ¶ 41.) Shortly thereafter, in November 2013, TSA reassigned Plaintiff from O'Hare to its facility in Rosemont, Illinois, where Plaintiff was responsible for managing TSA vehicles. (R. 44, Resp. to Def.'s Facts ¶ 13; R. 42-2 at 10-11, Nov. 18, 2013, TSA Mem.) This reassignment was an effort to reduce the number of employees with whom Plaintiff interacted to prevent further negative encounters between Plaintiff and his

co-workers. (R. 44, Resp. to Def.'s Facts ¶ 13.) The parties dispute, however, whether the reassignment exacerbated Plaintiff's TS. (R. 51, Resp. to Pl.'s Facts ¶ 42.)

In October 2013, Plaintiff contacted an EEO counselor and alleged that he had been harassed as well as discriminated and retaliated against because of his TS. (*Id.* ¶ 41.) He then filed an EEO complaint to the same effect based, in part, on the September 2013 letter of reprimand and November 2013 reassignment to Rosemont (the "2013 EEO Complaint"). (R. 44, Resp. to Def.'s Facts ¶ 14.) The retaliation claim in the 2013 EEO Complaint was based on Plaintiff's previous EEO activity in which he complained about a supervisor seven years before the 2013 EEO Complaint. (*Id.* ¶ 15.)

Despite his reassignment to Rosemont, Plaintiff continued to have negative encounters with other TSA employees because of his TS. (*Id.* ¶ 16.) Plaintiff met with TSA's Assistant Federal Security Director, Mark Lendvay, in April 2014, and during that meeting, Lendvay told Plaintiff that TSA policy restricted Plaintiff from using offensive language and racial slurs despite Plaintiff's TS. (R. 51, Resp. to Pl.'s Facts ¶¶ 36, 44.) During the meeting with Lendvay, Plaintiff complained that his supervisor was dishonest and requested an investigation as to his supervisor's dishonesty, but Lendvay declined to investigate the matter further. (*Id.* ¶ 45.)

Later in April 2014, Plaintiff met with TSA Deputy Federal Security Director Barbara Schukraft ("Schukraft"), and during that meeting, he uttered offensive words and a racial slur. (R. 44, Resp. to Def.'s Facts ¶ 17; *see also* R. 45-1 at 92, Aug., 18, 2014, Schukraft Letter; R. 51, Resp. to Pl.'s Facts ¶ 48.) Then, in the spring and summer of 2014, Plaintiff had multiple incidents involving TSA attorney Candace Norten in which he again uttered offensive words and racial slurs. (R. 44, Resp. to Def.'s Facts ¶ 18.) The parties dispute whether, during these

encounters, Plaintiff also manifested a physical tic involving offensive hand gestures. (*Id.* ¶¶ 17-18.)

In June and July 2014, Plaintiff met with Schukraft, and during the July meeting, Schukraft asked Plaintiff to present a plan that could prevent any offensive tics. (R. 51, Resp. to Pl.'s Facts ¶ 50; *see also* R. 45-1 at 252, July 3, 2014, Schukraft Email.) The parties dispute whether Plaintiff was able to satisfy Schukraft's request, but Defendant claims that Plaintiff "failed to provide any feedback or suggestions on how to formulate a workplace strategy." (*See* R. 51, Resp. to Pl.'s Facts ¶¶ 50-52.) On August 18, 2014, Schukraft sent Plaintiff a letter notifying him that she was proposing to remove him from the TSA. (*Id.* ¶ 53; R. 45-1 at 92, Aug., 18, 2014, Schukraft Letter.) The next day, August 19, 2014, TSA concluded its report of investigation as to Plaintiff's 2013 EEO Complaint. (R. 51, Resp. to Pl.'s Facts ¶ 54.) In September 2014, TSA terminated Plaintiff's employment. (R. 44, Resp. to Def.'s Facts ¶ 19; R. 42-2 at 29-33, Sept. 12, 2014, Termination Letter.)

In July 2014, before he was terminated, Plaintiff filed a request for accommodation with TSA. (R. 44, Resp. to Def.'s Facts ¶ 20.) TSA, however, closed that request in October 2014 because of Plaintiff's termination. (*Id.* ¶ 21; R. 42-2 at 42, October 2, 2014, Letter.) After Plaintiff was terminated, he contacted an EEO counselor and then filed another EEO complaint alleging discrimination and retaliation based on his termination and related closing of his request for an accommodation (the "2014 EEO Complaint"). (R. 44, Resp. to Def.'s Facts ¶ 22; R. 51, Resp. to Pl.'s Facts ¶ 56.)

On December 4, 2014, DHS issued a final decision denying the claims in the 2013 EEO Complaint and finding that Plaintiff failed to prove that he was subjected to workplace discrimination, harassment, or retaliation. (R. 44, Resp. to Def.'s Facts ¶ 23; R. 45-1 at 468-78,

May 18, 2017, EEOC Decision.) Plaintiff appealed that decision to the EEOC on January 19, 2015, and the EEOC affirmed DHS' decision on May 18, 2017. (R. 44, Resp. to Def.'s Facts ¶ 23; R. 45-1 at 468-78, May 18, 2017, EEOC Decision; R. 51-1 at 99, EEOC Appeal Brief.)

On July 6, 2016, DHS issued a final decision denying the claims in the 2014 EEO Complaint, finding that Plaintiff failed to prove that TSA discriminated or retaliated against him by terminating his employment. (R. 42-2 at 48-50, July 6, 2016, DHS Decision; R. 44, Resp. to Def.'s Facts ¶ 24.) Plaintiff was represented by an attorney when DHS issued this decision, and DHS sent the decision to both Plaintiff and his attorney. (R. 44, Resp. to Def.'s Facts ¶¶ 25-26.) The parties dispute whether Plaintiff recalls receiving the decision, but there is no dispute that Plaintiff's attorney received the decision. (*Id.* ¶¶ 27-28.) Plaintiff read the July 2016 decision and was notified of the decision by his attorney sometime between July 2016 and May 2017, but the parties dispute the exact time in which Plaintiff read the decision. (*Id.* ¶ 29; R. 51, Resp. to Pl.'s Facts ¶ 60.)

In a section titled "Notice of Appeal Rights," the July decision advised Plaintiff that he had "the right to file a civil action in an appropriate United States District Court within 90 days" after he received the decision or the right to appeal "the decision to the EEOC within 30 days of the day" he received the decision. (R. 42-2 at 51-52, July 6, 2016, DHS Decision.) The decision also advised Plaintiff that if he filed an appeal with the EEOC, he had the right to file "a civil action within 90 days after receipt of EEOC's final decision on appeal" or "after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC." (*Id.* at 52.) There is no dispute that Plaintiff understood this language in the July 2016 decision, and that he did not appeal the decision to the EEOC. (R. 44, Resp. to Def.'s Facts ¶ 30.) Rather, he filed the present lawsuit on August 16, 2017. (*Id.* ¶ 31.)

Plaintiff submits evidence showing that he contacted an attorney about filing a civil action related to the conduct alleged in both EEO Complaints. (R. 51, Resp. to Pl.'s Facts ¶ 61; R. 45-1 at 590, Meyer Decl.; R. 51-1 at 4-6, Ruggero Decl.) Plaintiff also presents evidence showing that he was advised by counsel to "sit and wait" for the EEOC to decide his appeal for the 2013 EEO Complaint, and that all issues related to his workplace complaints would need to be decided before he could file a civil action in federal court for workplace discrimination.[2] (R. 51, Resp. to Pl.'s Facts ¶¶ 62-64; R. 45-1 at 590-91, Meyer Decl.)

## PROCEDURAL HISTORY

On August 16, 2017, Plaintiff filed the present lawsuit. (R. 1, Compl.) The complaint brings four counts against Defendant related to the allegations in the 2013 and 2014 EEO Complaints: disability discrimination and "reprisal" in violation of the Rehabilitation Act (Count I); hostile work environment based on the Rehabilitation Act and "reprisal" based on Title VII (Count II); a second "reprisal" claim pursuant to the Rehabilitation Act (Count III); and a second "reprisal" claim based on a violation of Title VII (Count IV). (*Id.* ¶¶ 62-77.) After the parties tried but were unable to reach a settlement, the case proceeded through discovery, and Defendant filed a partial motion for summary judgment. (R. 37, Min. Entry; R. 39, Min. Entry; R. 41, Mot.)

The motion asks the Court to grant summary judgment only against Plaintiff's claims related to Plaintiff's termination and July 2014 reasonable accommodation request because Plaintiff failed to timely file a civil action after DHS issued a final agency decision rejecting the 2014 EEO Complaint, which addressed those employment decisions. (R. 41-1, Mem. at 1.) According to Defendant, a plaintiff must file a civil action covering the same subject matter as an

[2] Defendant argues that the Court should not consider this evidence, (R. 50, Reply at 1-2, 8-9), but the Court finds that consideration of this evidence does not change the outcome of this case.

EEO complaint within 90 days of his or her receipt of a final agency decision on the EEO complaint. (*Id.* at 5-6.) Defendant argues that, as a result, Plaintiff was required to file the present action no later than October 10, 2016, but failed to do so and instead filed this action on August 16, 2017, more than ten months after the October 10 deadline. (*Id.* at 6.) Thus, Defendant maintains that Plaintiff's claims covering the same subject matter as his 2014 EEO complaint are time-barred. (*Id.*) Defendant also argues that equitable tolling—a legal doctrine that excuses a party's failure to comply with a statutory deadline—does not apply in this case. (*Id.* at 6-7.)

In response, Plaintiff argues that his 2014 EEO Complaint involved a continuation of the conduct alleged in his 2013 EEO complaint, and, as a result, Plaintiff's timely filing of a civil action for the 2013 EEO Complaint also raises the issues from the 2014 EEO Complaint before the Court in a timely manner. (R. 43-1, Resp. at 6-13.) Alternatively, Plaintiff argues that the deadline for filing a civil action related to the 2014 EEO Complaint should be equitably tolled because his attorney failed to properly advise him as to the statutory deadlines for filing a civil action, and such failure "rises to the level of extra[ordinary] circumstances" as well as "severe professional misconduct" warranting equitable tolling. (*Id.* at 13-15.)

Defendant replies that the Court should not consider Plaintiff's privileged communications between Plaintiff and his attorney that he uses to support his equitable tolling argument, because those communications were not previously disclosed. (R. 50, Reply at 1-2, 8-9.) Defendant further argues that even if the Court considers Plaintiff's communications with his attorney, these communications do not show the type of "extraordinary" circumstances that would justify equitable tolling. (R. 50, Reply at 2, 8-11.) Plaintiff and Defendant filed a sur-reply and sur-sur-reply, respectively, which largely repeat the arguments in their other briefs. (R. 56-1, Sur-reply at 3-14; R. 60, Sur-sur-reply at 2-7.) Plaintiff, however, also submitted with his

sur-reply further evidence to show that he diligently sought advice of counsel and believed, in good faith, that he did not need to file a lawsuit related to the 2014 EEO Complaint within 90 days of DHS' final agency decision on the 2014 EEO Complaint. (R. 56-1, Sur-reply at 6-14.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotation omitted). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a dispute exists, the Court must "consider all of the evidence in the record in the light most favorable to the non-moving party[] and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quotation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (quotation omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (quotation omitted). The nonmovant "must go beyond the pleadings (*e.g.*,

produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [his or her] favor." *Id.* (quotation omitted). "Inferences supported only by speculation or conjecture will not suffice," and neither "will the mere scintilla of evidence." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). In addition, not all factual disputes will preclude the entry of summary judgment but only disputes of material fact—"irrelevant or unnecessary factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quotation omitted). "[T]he substantive law will identify which facts are material." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quotation omitted).

In deciding a summary judgment motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson*, 477 U.S. at 255; *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818-19 (7th Cir. 2015). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

### I. Timeliness of Plaintiff's Claims Related to the 2014 EEO Complaint

Defendant argues that Plaintiff failed to timely file a lawsuit within 90 days after he received a final decision from DHS on July 6, 2016, which rejected the claims in his 2014 EEO Complaint. (R. 41-1, Mem. at 5-6.) Thus, according to Defendant, all claims related to the 2014 EEO Complaint are time-barred. (*Id.*) Plaintiff does not dispute that he failed to file a lawsuit within 90 days of receiving the July 2016 decision, which notified Plaintiff of his right to file a suit in federal court within 90 days of the decision. (R. 44, Resp. to Def.'s Facts ¶¶ 24-28, 30-31.) Rather, Plaintiff argues that the events alleged in the 2014 EEO Complaint arise out of

the investigation of the facts in the 2013 EEO Complaint and therefore are properly before the Court because Plaintiff timely filed this lawsuit after the EEOC denied his appeal of the 2013 EEO Complaint. (R. 43-1, Mem. at 6-8.) Similarly, Plaintiff also argues that the scope of his claims in the 2013 EEO Complaint are "reasonably related" to the claims in the 2014 EEO Complaint; therefore, he is entitled to pursue the claims from the 2014 EEO Complaint in this lawsuit. (*Id.* at 8-13.)

The Court first addresses whether Plaintiff's failure to file a lawsuit within 90 days after he received the July 2016 final agency decision bars his claims related to the 2014 EEO Complaint. Under Title VII and the Rehabilitation Act, a plaintiff alleging employment discrimination must file a lawsuit within 90 days of receiving a final agency decision on his or her claims. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *Poullard v. McDonald*, 829 F.3d 844, 850 (7th Cir. 2016); *see also Edwards v. Donahoe*, 503 F. App'x 468, 471 (7th Cir. 2013) (citing 29 C.F.R. § 1614.103 and observing that "[c]laims of disability discrimination brought under the Rehabilitation Act follow the same procedures and provide the same remedies as claims of discrimination based on the characteristics protected under Title VII"). The ninety-day period begins upon receipt of the final agency decision by either Plaintiff or his attorney. *Batchelor v. Donovan*, 380 F. App'x 537, 538 (7th Cir. 2010); *see also Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005) ("[T]wo types of receipt of a notice can start running the 90-day limitation period, and each does so equally well: actual receipt by the plaintiff, and actual receipt by the plaintiff's attorney, which constitutes constructive receipt by the plaintiff[.]").

There is no dispute that Plaintiff's attorney received DHS' July 2016 final agency decision rejecting the claims in the 2014 EEO Complaint on July 12, 2016. (R. 44, Resp. to

Def.'s Facts ¶¶ 24-28.) Accordingly, Plaintiff was required to file a lawsuit related to those claims within 90 days, or on or before October 10, 2016. *See Poullard*, 829 F.3d at 850; *Edwards*, 503 F. App'x at 471; *see also Batchelor*, 380 F. App'x at 538. Plaintiff failed to do so and instead filed this lawsuit on August 16, 2017. (R. 44, Resp. to Def.'s Facts ¶ 31.) Therefore, his claims from the 2014 EEO Complaint are time-barred. *See, e.g.*, *Lollis v. Donahue*, No. 09 C 4967, 2012 WL 33005, at *4 (N.D. Ill. Jan. 6, 2012) (disposing on summary judgment claims that were part of an EEO Complaint where the plaintiff failed to file suit within the 90-day window following receipt of final agency decision); *Estes v. Potter*, No. 05 C 5301, 2006 WL 2724921, at *1 (N.D. Ill. Sept. 20, 2006) ("Dismissal is appropriate when a federal employee fails to comply with these filing deadlines.").

The Court rejects Plaintiff's contention that claims from the 2014 EEO Complaint are not time-barred because they "are a continuation of the same conduct that involve the same individuals" and "originate out of" the same facts as the 2013 EEO Complaint. (R. 43-1, Resp. at 6-8.) Plaintiff's termination and denial of a reasonable accommodation, which are the subject of the 2014 EEO Complaint, are discrete acts not discussed or referenced anywhere in the 2013 EEO Complaint. (R. 44, Resp. to Def.'s Facts ¶¶ 14, 22; *see also* R. 45-1 at 467-77, May 18, 2017, EEOC Decision.) Indeed, the conduct alleged in the 2013 EEO Complaint entirely predated the conduct alleged in the 2014 EEO Complaint, and therefore Plaintiff cannot raise the claims in the 2014 EEO Complaint in a lawsuit based on the 2013 EEO Complaint. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Plaintiff's broad "continuation" theory would easily circumvent the statutory time limits of the EEO procedural process.

Next, Plaintiff contends that the claims from the 2014 EEO Complaint can be brought in this lawsuit because they are "reasonably related" to the claims from the 2013 EEO Complaint. (R. 43-1, Resp. at 8-13.) Plaintiff is correct that he may proceed on claims in this lawsuit arising from the 2014 EEO Complaint to the extent those claims are "reasonably related" to the claims in the 2013 EEO Complaint, which have been timely raised in this lawsuit.[3] *Harris v. City of Harvey*, No. 12 C 10370, 2014 WL 5032303, at *2 (N.D. Ill. Oct. 8, 2014). More specifically, "[a] plaintiff . . . may proceed on a claim not explicitly mentioned in his EEOC charge if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge." *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008) (internal quotation omitted); *see also Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) ("[W]ritten allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." (internal quotation and alteration omitted)). "Claims are reasonably related if there is a factual relationship between them." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). Thus, the allegations in this lawsuit related to the 2014 EEO Complaint "must, at a minimum, describe the same conduct and implicate the same individuals" as the 2013 EEO Complaint. *Huri*, 804 F.3d at 831-32. This rule aims to give the EEOC and employer a chance to settle the dispute and to give the employer sufficient notice of the conduct about which the employee is complaining. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Whether claims are reasonably related to each other is a question of law, *Conner v.*

---

[3] In its decision on May 18, 2017, which affirmed the final agency decision on the 2013 EEO Complaint, the EEOC notified Plaintiff that he had 90 days to file a civil action in federal court. (R. 45-1 at 478, May 18, 2017, EEOC Decision.) Plaintiff timely filed the present action 90 days after May 18, 2017, which is the earliest day Plaintiff could have received the decision. *See Poullard v. McDonald*, 829 F.3d 844, 850 (7th Cir. 2016).

*Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), and the Court employs a "liberal standard in determining if new claims are reasonably related to those claims mentioned in the EEOC charge." *Miller*, 525 F.3d at 525-26.

Even employing this liberal standard, however, the Court concludes that there is no dispute that the claims in the 2014 EEO Complaint concern entirely different conduct than that described in the 2013 EEO Complaint and could not reasonably be expected to grow out of an investigation of the charges in the 2013 EEO Complaint. The conduct described in the 2014 EEO Complaint centers around Plaintiff's termination, whereas the 2013 EEO Complaint deals with other independent and discrete employment decisions: Plaintiff being asked to provide information regarding his medical condition, Plaintiff receiving less pay than a coworker, Plaintiff receiving the letter of reprimand, alleged workplace burdens placed on Plaintiff in December 2013, and Plaintiff's unfavorable performance evaluations in 2013. (*Compare* R. 44, Resp. to Def.'s Facts ¶¶ 14, 22, R. 45-1 at 134-35, Meyer April 27, 2014, Aff., *and* R. 45-1 at 467-77, May 18, 2017, EEOC Decision, *with* R. 42-2 at 45, July 6, 2016, DHS Decision *and* R. 45-1 at 439-40, Report of Investigation.) These are separate, distinct acts not reasonably related to Plaintiff's termination and other employment actions connected with Plaintiff's termination that occurred in 2014. *See, e.g., Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (observing that where "two employment decisions are wholly independent," such as a termination and subsequent decision not to rehire an employee, "they cannot be reasonably related to one another"); *McCauley v. Akal Sec., Inc.*, 833 F. Supp. 2d 864, 868 (N.D. Ill. 2011) (EEO complaint that referenced the plaintiff's suspension and termination not reasonably related to alleged denial of optimal work assignments, with the court observing that "because any additional alleged act of discrimination could be said to be part of a pattern, allowing a claim to

go forward on that basis would eviscerate the general requirement that a Title VII plaintiff must exhaust her administrative remedies" (internal quotation omitted)).

Nor could the conduct described in the 2014 EEO Complaint—conduct that had not yet occurred at the time of the 2013 EEO Complaint—be reasonably expected to grow out of an investigation of the conduct described in the 2013 EEO Complaint. *See, e.g., Battle v. ALDI, Inc.*, No. 16-CV-05540, 2016 WL 6135731, at *3 (N.D. Ill. Oct. 21, 2016) (finding that employment decision occurring after conduct described in the EEO complaint was "necessarily outside the scope" of the EEO complaint); *Langer v. Bd. of Educ. of the City of Chi.*, No. 11 CV 5226, 2013 WL 5646673, at *6 (N.D. Ill. Oct. 16, 2013) (conduct not mentioned in the EEO complaint could not give fair notice of such conduct). Because Plaintiff's termination and events related to his termination described in the 2014 EEO Complaint had not yet occurred when Plaintiff filed the 2013 EEO Complaint, nor were they described in the 2013 EEO Complaint, TSA simply lacked any fair notice of the claims related to the 2014 Complaint based on the charges in the 2013 EEO Complaint. *See Chaidez v. Ford Motor Co.*, No. 18-2753, 2019 WL 4050996, at *4 (7th Cir. Aug. 28, 2019) (concluding that one employment application process was not reasonably related to a second, different application process, although both generally concerned hiring, because the employment application process complained of "was not the misconduct of which the EEOC charges placed [the employer] on notice or provided an opportunity for settlement").

Plaintiff fails to present a persuasive argument that the events alleged in the 2013 Complaint involved the same conduct and same individuals as the 2014 EEO Complaint, or that the claims from the 2014 EEO Complaint would reasonably grow out of an investigation of the 2013 EEO Complaint. Rather, Plaintiff argues that the 2013 EEO Complaint "represented the

beginning of the factual pattern of harassment and discrimination to which [Plaintiff] was continually subject to . . . until his termination one year later," and that the acts alleged in the 2013 EEO Complaint "create a continual timeline of events until the termination." (R. 43-1, Resp. at 9-12; *see also* R. 56-1, Sur-reply at 6.) Courts repeatedly reject such arguments relating to a "pattern" of harassment, because accepting such a position would "eviscerate the general rule that each separate act of discrimination must be set out in an EEOC charge before an action can be brought." *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010); *see also Burroughs v. Cook Cty. Clerk*, No. 17 C 5098, 2018 WL 5085765, at *6 (N.D. Ill. Oct. 18, 2018) ("Plaintiff argues that these incidents were all part of a 'pattern' of wrongful acts, . . . but the Seventh Circuit has expressly rejected this type of argument."); *McCauley*, 833 F. Supp. 2d at 868. Plaintiff's claims arising out of the 2014 EEO Complaint, therefore, are time-barred.

## II. Equitable Tolling

Plaintiff alternatively argues that even if his claims are time-barred, the Court should equitably toll the deadline for raising the claims in his 2014 EEO Complaint so that he can raise them in the present action. (R. 43-1, Resp. at 13.) Plaintiff maintains that his attorney advised him to wait until the EEOC decided his appeal of the 2013 EEO Complaint, and that such erroneous advice was an "extraordinary circumstance" justifying equitable tolling. (*Id.* at 13-15.)

The 90-day deadline that Plaintiff failed to comply with is akin to a statute of limitations, and therefore it is subject to equitable tolling where appropriate. *See Moore v. Henderson*, 174 F. Supp. 2d 767, 773 (N.D. Ill. 2001). Plaintiff's basis for applying equitable tolling in this case is mistaken legal advice, (R. 43-1, Resp. at 13-15), but the law is well-settled that mistakes of law are not a basis for equitable tolling. *Schmidt v. Wis. Div. of Vocational Rehab.*, 502 F. App'x 612, 614 (7th Cir. 2013) ("[M]istakes of law (even by plaintiffs proceeding pro se) generally do not excuse compliance with deadlines or warrant tolling a statute of limitations."); *Williams v.*

*Sims*, 390 F.3d 958, 963 (7th Cir. 2004) ("[E]ven reasonable mistakes of law are not a basis for equitable tolling. . . . Otherwise statutes of limitations would have little bite, and no value at all to persons or institutions sued by people who don't have good, or perhaps any, lawyers."). The Court is sympathetic to Plaintiff's efforts to diligently secure counsel and navigate his workplace discrimination claims through various federal agencies and the federal court system. Unfortunately, even if Plaintiff believed that the two complaints could be consolidated together in this lawsuit, a mistaken belief is simply not a basis to equitably toll the 90-day deadline to bring a civil suit related to the 2014 EEO Complaint. *See Williams*, 390 F.3d at 963; *see also Lombardo v. United States*, 860 F.3d 547, 552 (7th Cir. 2017) ("[T]he Supreme Court, and other courts have consistently held, mistakes or miscalculations of that sort by a party's attorney do not satisfy the extraordinary circumstances element for equitable tolling.").

The equitable tolling cases that Plaintiff relies on are not analogous. Plaintiff relies on *Holland v. Florida*, 560 U.S. 631, 651-52 (2010), and cases similar to *Holland*, which makes clear that "a 'simple miscalculation' that leads a lawyer to miss a filing deadline . . . does not warrant equitable tolling." *Holland*, 560 U.S. at 651-52. *Holland* involved an attorney who essentially abandoned his client and failed to communicate over a period of several years. *Holland*, 560 U.S. at 659. Here, on the other hand, Plaintiff's attorney did not abandon Plaintiff or fail to communicate with him over several years; rather, Plaintiff submits that his attorney did communicate with him but simply incorrectly advised him to "sit and wait" until the 2013 EEO Complaint was resolved before filing a lawsuit in federal court. (R. 51, Resp. to Pl.'s Facts ¶¶ 62-64; R. 45-1 at 590-91, Meyer Decl.)

At best, Plaintiff's case presents a case of garden variety negligence instead of the complete abandonment and failure to communicate that occurred in *Holland*. *Holland*, 560 U.S.

at 651-52 (observing that "garden variety" negligence does not constitute the extraordinary circumstances that might warrant equitable relief). Thus, *Holland* and the cases similar to *Holland* that Plaintiff relies upon are inapposite. (*See* R. 43-1, Resp. at 14-15 (citing *United States v. Martin*, 408 F.3d 1089, 1094 (8th Cir. 2005) (case involving attorney who misled client and completely failed to communicate with client); *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (case involving complete failure to communicate with client and failure to return the client's file, which "distinguish[ed] it from . . . merely negligent performance of counsel"), *as amended* (Nov. 3, 2003); *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (case involving "extraordinary circumstances" of failing to follow client direction and failing to communicate with a client); *Calderon v. U.S. Dist. Court for Cent. Dist. of Cal.*, 163 F.3d 530, 541 (9th Cir. 1998) (equitable tolling appropriate where party had "serious mental problems for many years"), *abrogated by Woodford v. Garceau*, 538 U.S. 202 (2003).) The Court, therefore, concludes that Plaintiff's claims arising from the 2014 EEO Complaint are time-barred, and the Court grants summary judgment in Defendant's favor on those claims.

## CONCLUSION

For the foregoing reasons Defendant's motion for partial summary judgment (R. 41) is GRANTED. Now that the scope of this lawsuit has been somewhat narrowed, the parties are urged to restart their efforts to resolve this dispute before any further court proceedings.

**ENTERED:** ______________________
**Judge Rubén Castillo**
**United States District Court**

**Dated: September 20, 2019**